[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14230
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-00234-LAG

EDDIE L. COOPER,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF TRANSPORTATION,
BRAD CLEVELAND,
in his official capacity as an area manager of the
Georgia Department of Transportation and in his office capacity,
THOMAS AVERY,
in his official capacity as an area manager for the
Georgia Department of Transportation and in his office capacity,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(November 17, 2020)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Eddie L. Cooper appeals the district court's grant of summary judgment in favor of his former employer, Georgia Department of Transportation, and two of his former supervisors, Brad Cleveland and Thomas Avery, on his claims for race discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983, and age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* After careful review of the parties' briefs and the record, we affirm.

## I

### A

Mr. Cooper, an African American man born in 1958, began working for the Georgia Department of Transportation in 1988. Though Mr. Cooper was initially employed as a temporary worker, he was promoted to a permanent position as a maintenance equipment operator in 1994. He was again promoted in 2006 to assistant foreman and remained in that position until he was terminated on June 3, 2014.

Mr. Cooper was an assistant foreman on an area-wide crew, which was responsible for maintaining road shoulders in four to five counties. Each area-wide crew is led by an assistant foreman and a foreman. Wilfred Nichols, who is also African American, was the foreman on Mr. Cooper's crew and served as his direct

supervisor.  Since 2012, Mr. Avery, an assistant area manager, has supervised the crew.  Mr. Avery reports to Mr. Cleveland, an area manager.

The parties dispute whether the assistant foreman position was a "classified" position under Georgia law, which distinguishes between "classified" and "unclassified" public employees.  *See* O.C.G.A. §§ 45-20-2(2), (3), (4), (13), and (14).  Employees in "classified" positions are conferred particular rights of appeal, whereas employees in "unclassified" positions are not.  *See* § 45-20-2(3).  According to the GDOT's policies and procedures, unclassified employees may also be dismissed at any time without notice or a statement of reasons.  The personnel form authorizing Mr. Cooper's promotion to assistant foreman states that it is an "unclassified" position.

**B**

Although Mr. Cooper's performance evaluations—which were completed by Mr. Nichols—were generally satisfactory, he was reprimanded or counseled to improve his conduct a number of times between 2002 and 2014.  For example, Mr. Cooper was orally reprimanded in 2002 for raising his voice to a supervisor during a meeting.  A 2008 coaching report indicates that he was counseled for acting unprofessionally and leaving his job site without permission.  The next year, Mr. Cooper was issued a letter of caution for not adhering to his supervisor's instructions and becoming argumentative when given directives.  And a coaching report from

3

January of 2013 indicates that he was advised "to dress neatly and appropriately" while on the job and ensure that clothes fit properly to avoid exposure of his buttocks, which he had inadvertently exposed while working.

In April of 2013—about a year before the termination—Stacey Aultman, the District Maintenance Engineer, issued Mr. Cooper a written reprimand for "inappropriate and unprofessional" behavior during an incident in which he aggressively "moved toward Mr. Nichols," raised his voice, and invaded Mr. Nichols' personal space.  D.E. 36-4 at 170.  Due to this event, Mr. Cooper's prior misconduct, and his "refusal to change [his] behavior," Ms. Aultman placed him on a performance improvement plan and ordered him to attend anger management.  The performance improvement plan instructed that Mr. Cooper should "[d]ress appropriately," maintain a professional relationship with co-workers and supervisors, and "[a]ccept responsibility" for his mistakes.  *See* D.E. 36-4 at 172.  The performance improvement plan cautioned Mr. Cooper that if he "fail[s] to adhere to the requirements of th[e] Plan or fail[s] to make significant and sustained improvement in [his] work performance," he would be "subject to further disciplinary action, up to and including dismissal from employment[.]"  *Id*. at 173.

In early 2014, Emma Cole, an Equal Employment Officer for the GDOT, met with some members of Mr. Cooper's area crew who believed they were being treated unfairly or in a discriminatory manner regarding promotions, training, and titles.  Mr.

4

Cooper complained to Ms. Cole that he "was being treated differently from other assistant forem[en] and other employees," D.E. 44-2 ¶ 7, and that he was being "harassed" by Mr. Avery because of his race. *See* D.E. 36-4 at 75. When Ms. Cole asked for specific examples of discriminatory conduct, he explained that Mr. Avery was "constantly out on the road, following [him]" and "watching [him]," that Mr. Avery required him to pick up roadkill, and that his supervisors were "constantly putting stuff in [his] file" that he worried would hinder his chances of being promoted to foreman after Mr. Nichols retired. *See* D.E. 36-4 at 76–81.

In March of 2014, Mr. Nichols reported to Mr. Avery another incident in which Mr. Cooper's pants were sagging and exposing his buttocks, which led to a complaint from a co-worker. On March 5, 2014, Mr. Avery reported the incident to Mr. Cleveland and to District Human Resources Officer Dawn Townson, stating that this was an ongoing concern and that Mr. Nichols wanted to issue a written reprimand. Mr. Cleveland instead decided to issue a coaching report—an informal, non-disciplinary document. Mr. Cleveland and Mr. Nichols met with Mr. Cooper that same day and instructed him to dress appropriately and avoid inadvertent exposure.

On May 16, 2014, after Mr. Avery returned from medical leave, he met with Mr. Cooper and Mr. Nichols to issue a written coaching report documenting the March meeting. Mr. Cooper refused to sign the coaching report, noting that he did

5

not "agree with the way things w[ere] done." D.E. 36-4 at 180. According to Mr. Avery, Mr. Cooper became "angry" and "argumentative" during the meeting. D.E. 36-1 ¶ 29. Mr. Cooper called Mr. Avery after the meeting and "said the same things over and over again about how [they] were doing him wrong and he was tired of it[.]" D.E. 36-1 ¶ 30. Mr. Avery was concerned that he "could not even talk to [Mr. Cooper] about something as minor as . . . his pants sagging[,]" D.E. 36-10 ¶ 19, and on May 22, 2014, told Mr. Cleveland that Mr. Cooper had been argumentative and refused to sign the coaching report. Mr. Cleveland reported the situation to the District Human Resources Office.

The District Human Resources Officer emailed the Deputy Director of Human Resources, Mike Johnson, about the May 16 meeting—pursuant to a policy requiring that all adverse employment actions be forwarded to the Deputy Director—and recommended that Mr. Cooper be demoted. After considering Mr. Cooper's performance history, past disciplinary actions, and supervisory role, Mr. Johnson recommended termination instead. Mr. Johnson stated in his affidavit that his decision was based on "a combination of things, including the cumulative effect of Mr. Cooper's past disciplinary actions as well as the incident of argumentative and disruptive behavior in May, 2014." D.E. 36-11 ¶ 9. He also explained that Mr. Johnson's failure to show improvement after the performance improvement plan and mandatory anger management was ordered just a year earlier "made this situation

6

much more concerning." *Id.* ¶ 10.    Mr. Johnson further averred that he never met Mr. Cooper, and at the time he made his decision, he did not know Mr. Cooper's race or age.

Mr. Avery and Mr. Cleveland concurred with Mr. Johnson's recommendation, based on Mr. Cooper's disciplinary history and lack of improvement after he was issued the performance improvement plan.    In accordance with the GDOT's procedures, Deputy Director Todd Long and Commissioner Keith Golden reviewed and signed an adverse action form approving Mr. Johnson's recommendation to terminate Mr. Cooper.    The form indicated that Mr. Cooper was being terminated for "misconduct," and briefly recounted Mr. Cooper's disciplinary history.    D.E. 36-11 at p. 9.    Mr. Cooper's official termination letter stated that he was "dismissed from employment in the unclassified service" effective June 3, 2014, and did not include a reason for his termination.    D.E. 36-4 at 181.

Mr. Cooper was replaced by Anthony Allison, who is African American and was born in 1959.  On July 1, 2014, Mr. Nichols retired, leaving the foreman position open.    Mr. Cooper did not apply for that position.    In October of 2014, Tommy Swain, an African American man who was born in 1956, was selected to replace Mr. Nichols.

**C**

7

On October 8, 2014, Mr. Cooper filed a charge with the EEOC alleging race discrimination, age discrimination, and retaliation. About two years later, the EEOC issued a Notice of Right to Sue. Mr. Cooper subsequently sued the GDOT—as well as Mr. Avery and Mr. Cleveland—alleging that they wrongfully terminated him and failed to promote him to the foreman position based on race, and retaliated against him for complaining about race discrimination, in violation of Title VII and §§ 1981 and 1983. He also alleged that they discriminated against him based on his age in violation of ADEA.[1]

The defendants moved for, and Mr. Cooper opposed, summary judgment on all claims. Mr. Cooper also filed a "Notice of Objection," in which he sought to strike the affidavit of Brian Robinson and the declarations of Mr. Johnson, Mr. Avery, and Mr. Cleveland, which were submitted with the defendants' motion for summary judgment.

The district court granted the defendants' motion and denied Mr. Cooper's request to strike the affidavit and declarations. In doing so, the district court found that Mr. Cooper could not make out a *prima facie* case of wrongful termination because he did not show that similarly situated comparators were treated more

---

[1] Mr. Cooper also asserted equal protection, hostile work environment, and state-law claims, but we do not address these claims because they are not at issue on appeal. In addition, although Mr. Cooper purported to sue Mr. Avery and Mr. Cooper in both their individual and official capacities, they cannot be held liable under ADEA or Title VII in their individual capacities as they were not Mr. Cooper's employer. *See Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995). We therefore need not address their qualified immunity argument.

favorably than he was. Nor could he prevail on a "cat's paw" theory of liability; it was Mr. Johnson's decision to terminate Mr. Cooper, so he was not acting as a mere conduit to give effect to the discriminatory animus of a recommender.

In addition, the district court concluded that Mr. Cooper could not establish a *prima facie* case on his failure to promote claim, because there was no significant time lapse in filling the foreman position and it was ultimately filled by Mr. Swain, who is also African American. Though the district court stated that Mr. Cooper did establish a *prima facie* case of retaliation, the defendants proffered a legitimate nondiscriminatory reason for Mr. Cooper's termination: he was terminated for misconduct, including the May 2014 incident and the totality of his disciplinary history. The district court granted the defendants' summary judgment on this claim because Mr. Cooper did not present any evidence that this reason for his termination was pretextual. Finally, the district court concluded that the GDOT was entitled to Eleventh Amendment sovereign immunity on the ADEA claim.

This appeal followed.

## II

We review the district court's grant of summary judgment *de novo,* viewing the evidence in the light most favorable to Mr. Cooper and drawing all inferences in his favor. *See Walden v. Ctrs. for Disease Control & Prevention*, 669 F.3d 1277, 1283 (11th Cir. 2012). "Summary judgment is appropriate if 'there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We review the denial of a motion to strike affidavits and declarations for abuse of discretion. *See Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1343 (11th Cir. 2000).

### III

On appeal, Mr. Cooper challenges the district court's denial of his request to strike certain affidavits and declarations submitted with the defendants' summary judgment motion. He also asserts that the district court erred in granting summary judgment on his race discrimination and retaliation claims under Title VII and § 1981, and on his ADEA claim. We address each contention in turn.

### A

In his Notice of Objection, Mr. Cooper argued, among other things, that the affidavit of Mr. Robinson and the declarations of Mr. Johnson, Mr. Avery, and Mr. Cleveland should be stricken because "they contain evidence that is inadmissible, hearsay, conclusory, self-serving, and which contradicts sworn testimony[.]" He also asserted that they attached documents that were not disclosed in discovery, that Mr. Johnson's affidavit contained information that he does not have personal knowledge of, and that Mr. Robinson was not included on the defendants' witness list.

The district court did not abuse its discretion in denying Mr. Cooper's request to strike this evidence. Under the "sham affidavit" rule, a court may disregard an affidavit if it flatly contradicts, without any explanation, clear testimony that the party provided at an earlier deposition. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). This rule applies only to inherent, unexplained inconsistencies that create "transparent shams," not to discrepancies that merely create an issue of credibility or that go to the weight of the evidence. *See Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986). Mr. Cooper did not show that the affidavits or declarations contained inherent, unexplained inconsistencies with prior deposition testimony, so the district court did not err in declining to strike them.

In addition, even if an affidavit or declaration is "self-serving," that is not a basis for striking it. *See United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) (en banc) ("We hold that an affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated."). Mr. Cooper has not identified any document attached to the declarations that was not produced in discovery, and each attached document includes a bates stamp indicating that it was produced. *See* D.E. 36–9 at 9–12; D.E. 36-10 at 12–17; D.E. 36-11 at 7–9. Nor has he identified any specific statement in the affidavit or declarations that is inadmissible.

11

Although Mr. Johnson was not involved in each of Mr. Cooper's disciplinary actions, his affidavit explains his recommendation to terminate Mr. Cooper—a matter well within his personal knowledge.  Finally, although the defendants did not disclose Mr. Robinson as a witness, his three-page affidavit confirms that the Department's personnel records are kept in the ordinary course of business and are admissible.  The district court did not abuse its discretion in concluding that the defendants' failure to disclose him as a witness was "harmless," as his testimony did not go to an ultimate issue in the case.

**B**

We now turn to Mr. Cooper's arguments that the district court erred in granting summary judgment in favor of the defendants on his Title VII and § 1981 claims.  In the employment context, the same substantive analysis applies to § 1981 and Title VII claims, so we apply the same framework to resolve both claims.  *See Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir. 1994).  We first address Mr. Cooper's claims that the district court improperly construed the record against him, before turning to his claims of wrongful termination, failure to promote, and retaliation.

**1**

First, Mr. Cooper contends that the district court improperly construed the record in favor of the defendants at the summary judgment stage.  The disputes

12

concern his status as a classified or unclassified employee, his disciplinary history, Mr. Johnson's independent review of Mr. Cooper's record, and the GDOT's progressive disciplinary policy. We consider each in turn.

Mr. Cooper argues that the district court misconstrued the record when finding him to be an unclassified employee. However, the court properly concluded that Mr. Cooper's Assistant Foreman paperwork in 2006 indisputably designated him as an "unclassified employee." Numerous additional records confirm his unclassified status as an Assistant Foreman, including his April 2013 reprimand, the EEO department's correspondence, GDOT job postings, his termination letter, and the DOL's separation notice. Mr. Cooper's reliance on the January 2008 correspondence as establishing his classified status is misplaced because (1) it related to procedures implemented after he was already promoted in 2006; and (2) his promotion to a supervisory or management position, i.e., an Assistant Foreman, was not a "career ladder" or "career path" promotion according to the GDOT's promotion policies.

As to the district court's finding that he had a 12-year long disciplinary history, Mr. Cooper's personnel file consisted of disciplinary actions spanning a 12-year period from 2002 to 2014. Though he argues that he did not receive a disciplinary action for each of those 12 years, the court's order did not state or suggest that he did.

13

Mr. Cooper also argues that the district court erred in finding that Mr. Johnson conducted an independent investigation into his personnel file before recommending termination. This argument is unsupported by the record, which established that Mr. Johnson independently reviewed Mr. Cooper's disciplinary history, decided that the Commissioner would not authorize a demotion, and thus recommended termination instead.

As to a progressive disciplinary policy, contrary to Mr. Cooper's assertion, the district court did not find that there was no such policy, but correctly concluded that the evidence, including Mr. Cooper's personnel file, reflected that: (1) a progressive disciplinary approach had been applied; and (2) notwithstanding the policy, GDOT was allowed to fire Mr. Cooper without implementing progressive discipline after he had been placed on a Performance Improvement Plan, which warned of and allowed for immediate termination. Although he asserts that coaching forms should have been removed from his file after six months, he provides no evidence to support his belief, and the evidence, including multiple notices of reprimands, his Performance Improvement Plan, and the form authorizing his termination, establish otherwise.

Accordingly, the district court did not err in construing the record evidence under the proper summary judgment standard.

**2**

14

To establish a *prima facie* case of wrongful termination based on discrimination, a plaintiff must show that (1) he was member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) his employer treated "similarly situated" employees outside his class more favorably. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc); *see also Cuddleback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (requiring, as the fourth element, a showing that the employee was replaced by someone outside the protected class). To satisfy the fourth element, a plaintiff must show that he and his comparators are "similarly situated in all material respects." *Lewis*, 918 F.3d at 1224. While a case-specific inquiry, this Court has outlined several factors, including that a similarly situated comparator will have (1) engaged in the same basic conduct or misconduct; (2) been subject to the same employment policy, guideline, or rule; (3) ordinarily have the same supervisor; and (4) shared a similar employment or disciplinary history. *Id.* at 1227–28.

Mr. Cooper argues that he established a *prima facie* case of wrongful termination because (1) he was black, (2) he was qualified, and (3) he was more qualified and experienced than his replacement and the new Foreman. With respect to the fourth element, Mr. Cooper does not identify in his brief on appeal which similarly situated non-black employees were treated more favorably, but the record shows that Mr. Cooper had previously alleged two white Assistant Foremen, Velvet

15

Sorrow and Dewayne Sorrow, were treated more favorably. But Mr. Cooper failed to show that they were similarly situated in all material respects because he presented no evidence that they had engaged in similar misconduct or shared a similar disciplinary history as him. *See Lewis*, 913 F.3d at 1227-28. Velvet Sorrow and Dewayne Sorrow were under different supervision, and there is no record of their disciplinary issues being handled differently than Mr. Cooper's. Finally, because his replacement, Mr. Allison, was a black employee, he could not show that he was replaced by someone outside his protected class. *See Cuddleback*, 381 F.3d at 1235.

Even if he made out a *prima facie* case, Mr. Cooper was not able to show that the defendants' nondiscriminatory reason for firing him based on his history of argumentative behavior was pretext. Before termination, Mr. Cooper had been subjected to progressive discipline consisting of warnings, coaching sessions, reprimands, anger management, and placement on a Performance Improvement Plan, which warned of immediate termination for failure to show sustained improvement. The failure to offer a termination hearing is not evidence of pretext because, under GDOT policy, it was only available for classified employees. Even assuming, as the district court did, that Mr. Cooper should have been deemed a classified employee, he failed to establish that his designation as "unclassified" in 2006—eight years before his termination—was the result of racial animus, and not a mistake. Thus, because Mr. Cooper could not rebut the defendants' honest, good

16

faith belief that he was an unclassified employee, his termination without a statement of reasons or an appeal hearing was consistent with policy and not evidence of pretext. *See Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir. 1987).

Mr. Cooper makes several arguments that Mr. Cleveland and Mr. Avery had a vendetta against him, but he failed to present evidence that such alleged animus was based on his race. In fact, Mr. Cooper conceded that he never heard any disparaging remark based on race, and among the eight crews under Mr. Avery's supervision, six of eight Foremen were black, and six of eight Assistant Foremen were black. Mr. Cooper claimed that other employees were given the opportunity to drive GDOT vehicles home sometimes, but he never alleged an incident where he should have been permitted to drive a GDOT vehicle under policy but was not permitted to do so. *See Stewart*, 232 F.3d at 851. And with regards to his other allegations of different treatment than his coworkers, he did not dispute that all GDOT employees were responsible for picking up dead animals, and he did not identify any training that he was denied that would have been required for his duties as an Assistant Foreman or for a promotion to Foreman.

The district court did not err in finding that Mr. Cooper is unable to establish a *prima facie* case of wrongful termination based on his race.

**3**

To establish a *prima facie* case of failure to promote based on racial discrimination, a plaintiff must show that (1) he is a member of a protected group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; (4) the person who received the promotion was not a member of the plaintiff's protected group and had lesser or equal qualifications. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998).

First and foremost, Mr. Cooper did not apply for the Foreman position. He thus cannot establish a *prima facie* case of failure to promote without having applied. *See Carter*, 132 F.3d at 642. Although he argues that he was fired before he could apply for the position, he failed to show that he was terminated based on his race, for the reasons discussed above.

Second, Mr. Cooper also failed to show that the defendants selected a less qualified candidate outside of his protected class for the Foreman position. Mr. Swain, the successful candidate, was a black employee who was selected on his own merits; he had previously served as a temporary Foreman, had knowledge and experience in maintenance operations, skills in public relations, and a positive attitude. Mr. Cooper argues that Mr. Swain's prior criminal conviction rendered Mr. Swain unqualified for the position, but he failed to show that the prior criminal conviction had any bearing on Mr. Swain's qualifications as a Foreman. Even assuming a *prima facie* case, Mr. Cooper did not rebut the defendants' proffered

reason for not promoting him, and he failed to show that his termination based on behavioral issues was a pretext for racial animus, as discussed above.

**4**

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). An employee's complaint about discrimination constitutes protected activity if the employee could "reasonably form a good faith belief that the alleged discrimination existed." *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). To establish the necessary causation, a plaintiff must show that the protected activity was the but-for cause of the adverse action by the employer. *Id.*

Here, even assuming, as the district court did, that Mr. Cooper established a *prima facie* case of retaliation based on his complaints to EEO Officer Cole, he failed to show that such complaints were the but-for cause of his termination. Mr. Cooper could not show that the defendants' proffered reasons for his termination were pretext for retaliation, as discussed above. *See Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009).

**C**

Mr. Cooper also alleges he was subject to age discrimination in violation of the Age Discrimination in Employment Act. The district court dismissed Mr. Cooper's claims against the GDOT and Mr. Cleveland and Mr. Avery, finding that the GDOT and its employees were immune under the Eleventh Amendment.

We review *de novo* the granting or denial of Eleventh Amendment immunity. *See Lane v. Cent. Ala. Cmty. Coll.*, 772 F.3d 1349, 1350 (11th Cir. 2014). The district court erred in finding that Mr. Cleveland and Mr. Avery were immune under the Eleventh Amendment, but because Mr. Cooper cannot establish a *prima facie* case of age discrimination, we affirm the district court's finding of summary judgment in favor of the defendants nonetheless.

When a state or state entity is sued, it may assert a defense that it is immune from suit under the Eleventh Amendment. *See Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 72, 91-92 (2000). The ADEA did not validly abrogate states' sovereign immunity, so states are immune from suits under the ADEA unless they waive the defense. *See Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013). We have previously held that because the GDOT is an arm of the State, it is entitled to the same sovereign immunity of the State itself. *See Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992). Thus, Mr. Cooper's ADEA claim against the GDOT is barred under Eleventh Amendment immunity.

20

With respect to Mr. Cooper's claims against Mr. Cleveland and Mr. Avery, they are not subject to suit under the ADEA in their individual capacities. *See Lomax*, 45 F.3d at 403 n.4. *See also supra* note 1. As for the official capacity claims, Mr. Cooper is seeking prospective equitable relief in the form of reinstatement to his Assistant Foreman position or placement into the Foreman position; the Eleventh Amendment does not bar actions for equitable relief to end continuing violations of federal law, including suits seeking reinstatement of prior job positions. *See Lane*, 772 F.3d at 1351. Thus, the district court erred in finding Mr. Cleveland and Mr. Avery immune in their official capacities.

Although the district court did not reach the merits of Mr. Cooper's ADEA claim, this Court may affirm the district court's judgment on any ground that appears in the record. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Mr. Cooper relies on *Durham v. Rural/Metro Corp.*, 955 F.3d 1279 (11th Cir. 2020), to argue that we should vacate and remand. *Durham*, however, is distinguishable. In *Durham*, a district court granted summary judgment for the employer after concluding that a pregnant employee failed to establish a *prima facie* case of failure to accommodate without reaching the issue of whether the employer's proffered reason was pretext. 955 F.3d at 1287. On appeal, we concluded that the employee had established a *prima facie* case of sex discrimination, but because the

21

district court never considered the issue of pretext, the parties had not focused their arguments on appeal on that issue. *Id.*

In this appeal, Mr. Cooper argued in his initial brief that Mr. Cleveland and Mr. Avery had violated his constitutional right to be free from discrimination. The defendants responded in their brief—as they argued below—that Mr. Cooper failed to establish a *prima facie* case of age discrimination or that the nondiscriminatory reason was pretext, and Mr. Cooper had the opportunity to address this in his reply brief and did not do so.

When an ADEA claim is based on circumstantial evidence, we apply the *McDonnell Douglas* framework. *See Liebman v. Metropolitan Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015). To establish a *prima facie* case of age discrimination, the employee must show that (1) he was a member of the protected group between the age of 40 and 70; (2) he was subject to an adverse employment action; (3) a substantially younger person filled the position from which he was discharged; and (4) he was qualified to do the job from which he was discharged. *Id.* We have stated that even an age difference of three years was sufficient to qualify as "substantially younger." *Carter v. DecisionOne Corp.*, 122 F.3d 997, 1003 (11th Cir. 1997).

Mr. Cooper cannot establish a *prima facie* case of age discrimination. The evidence is undisputed that he was replaced by an employee who was only one year

22

younger than him, and the employee who was hired as the new Foreman was two years older.  Thus, Mr. Cooper cannot meet his burden to show that he was replaced by, or passed over for a promotion in favor of, a substantially younger person. Further, Mr. Johnson, who made the termination decision, did not know Mr. Cooper's age, so Mr. Cooper cannot establish that his age was the "but-for" cause of his termination.  Accordingly, the district court's order granting summary judgment in favor of the defendants on the ADEA claim is affirmed.

## IV

The district court's summary judgment order is affirmed.

**AFFIRMED.**